IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LARRY HALL,               ) | |
| )                             | |
| Plaintiff,                    ) | |
| )                             | |
| v.                            ) | CIVIL ACTION NO. 5:23-cv-117 (MTT) |
| )                             | |
| JOSHUA STAFF, et al.,         ) | |
| )                             | |
| Defendants.                   ) | |
| )                             | |

## ORDER

Plaintiff Larry Hall claims Defendants Joshua Staff, Sean Story, and Stephen Strickland, troopers with the Georgia State Patrol ("GSP"), used excessive force during a high speed chase. Doc. 1-1 at 33-46. Defendants Staff, Story, Strickland, and the State of Georgia move for judgment on the pleadings. Doc. 6. For the following reasons, that motion (Doc. 6) is **GRANTED in part**.

## I. BACKGROUND

On February 28, 2021, Staff "attempted to conduct a traffic stop on College Street in Macon, Georgia for a minor traffic violation." Doc. 1-1 at 39 ¶ 30. Hall was a passenger in that vehicle. *Id*. at 34, 40 ¶ 40. Rather than pull over, the driver of the vehicle continued onto the southbound lanes of Interstate 75. *Id*. at 39 ¶ 32. Staff followed the vehicle, "at a high rate of speed," and observed the vehicle "fail to maintain its lane," "begin to smoke," and lose chunks of its tires. *Id*. at 40 ¶¶ 32-35. During the pursuit, Staff's "patrol car began to slide." *Id*. at 40 ¶ 36. Soon after, Troopers Story and Strickland joined the chase. *Id*. at 40 ¶ 38. The vehicle continued driving on Interstate 75 with the three troopers following. *Id*. at 40 ¶¶ 37, 39. Then either Story or

Strickland performed a precision immobilization technique ("PIT maneuver") to stop the vehicle. *Id*. at 40 ¶ 40. As a result, the vehicle "struck the guardrail, some roadside equipment … and flipped." *Id*. at 41 ¶ 46. Hall "suffered multiple broken ribs, injuries to his back and neck and emotional distress." *Id*. at 41 ¶ 47.

After the crash, the troopers removed Hall from the vehicle and sat him "on the ground next to" a GSP patrol car, which was "close to the lane of travel." *Id*. at 41 ¶ 48. "While [Hall] was sitting on the ground," another vehicle struck the GSP patrol car, "which caused broken glass and debris to strike" Hall. *Id*. at 42 ¶ 49.

On February 27, 2023, Hall filed suit in the State Court of Bibb County against the State of Georgia and Troopers Staff, Story, and Strickland. Doc. 1-1 at 2-15. Hall's complaint alleged claims under 42 U.S.C. § 1983 and state law claims for assault, battery, and intentional infliction of emotional distress. *Id*. at 42-45 ¶¶ 50-73. The defendants removed the case on April 3, 2023, and now move for judgment on the pleadings. Docs. 1; 6.

Troopers Staff, Story, and Strickland argue that Hall's § 1983 claims fail because they are entitled to qualified immunity, and Hall's state law claims are barred by official immunity. Doc. 6-1 at 7-16. The State of Georgia contends that Hall's § 1983 claims are improper because (1) the state is entitled to Eleventh Amendment Immunity and (2) the state is not a "person" subject to suit under § 1983.[1] *Id*. at 5-7. Furthermore, the state argues that Hall's state law claims are barred by sovereign immunity. *Id*. at 15.

---

[1] Hall agrees his § 1983 claims against the State of Georgia are improper, albeit for a different reason than the defendants. Specifically, Hall claims that because he "did not name the individual supervisor of the individual Defendants" and "[s]ince the Statute of limitations is now expired to add the correct Defendant" he "agrees that the Section 1983 claims against the State are due to be dismissed." Doc. 13 at 1 n.1.

**II. STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)).  A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion.  *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999).  "Where a defendant moves for judgment on the pleadings, the fact allegations of the complaint are to be taken as true, but those of the answer are taken as true only where and to the extent that they have not been denied or do not conflict with those of the complaint."  *Parker v. DeKalb Chrysler Plymouth*, 459 F. Supp. 184, 187 (N.D. Ga. 1978) (citing *Stanton v. Larsh*, 239 F.2d 104 (5th Cir. 1956)).[2]

To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), and therefore also Rule 12(c), a complaint must contain sufficient factual matter "to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

Both parties are only partially correct.  Hall's § 1983 claims against the State of Georgia are improper because the State of Georgia is not a "person" subject to liability for damages under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989).  However, Hall's § 1983 claims are *not* barred by Eleventh Amendment immunity because "[w]hen a state removes an action to federal court, the state waives its Eleventh Amendment immunity."  *Hardwick v. CorrectHealth Bibb, LLC*, 2022 WL 468042, at *6 n.7 (M.D. Ga. Feb. 15, 2022) (citing *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002)).  Accordingly, with the consent of the parties, Hall's § 1983 claims against the State of Georgia are **DISMISSED without prejudice**.

[2] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  A Rule 12(c) motion for judgment on the pleadings, must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the factual allegations.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

### III. DISCUSSION

### A. Section 1983 Claims Against Staff, Story, and Strickland

Hall alleges Staff, Story, and Strickland[3] violated the Fourth Amendment by using a PIT maneuver to terminate the vehicle pursuit.[4]  Doc. 1-1 at 42 ¶ 52.  Hall's § 1983

---

[3] Hall's § 1983 claim against the individual troopers (i.e., Count 1) states that the "[d]efendants" violated the Fourth Amendment by "performing a PIT maneuver."  Doc. 1-1 at 42 ¶¶ 51-52.  But in the "general allegations" section of his complaint, Hall specifies that either Story or Strickland performed the PIT maneuver.  *Id*. at 40 ¶ 40.  Regardless of who performed the PIT maneuver, Hall has not alleged a Fourth Amendment violation.

[4] In addition to arguing that the PIT maneuver violated the Fourth Amendment, Hall asserts in his response brief that the defendants' decision to remove him from the vehicle and place him on the side of the road violated the Fourth Amendment.  Doc. 13 at 6.  While Hall alleges these facts in the "general allegations" section of his complaint, he does not allege that this conduct violated the Fourth Amendment.  Doc. 1-1 at 41-42 ¶¶ 48-49, 50-55.  Even if Hall could amend his complaint with his briefing—which he cannot—his § 1983 claim would still be subject to dismissal.  *Henderson v. McMurray*, 611 F. Supp. 3d 1287, 1295 (N.D. Ala. 2020), *aff'd,* 987 F.3d 997 (11th Cir. 2021); *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) ("A plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment.").  At most, the defendants' decision to remove Hall from the vehicle and place him close to the road was negligent.  Doc.

claims against Staff, Story, and Strickland fail because the troopers are entitled to qualified immunity.[5]

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). Hall does not dispute that Staff, Story, and Strickland were acting within their discretionary authority, so the burden shifts to him to show the troopers violated his clearly established rights. Docs. 1-1 at 37-38 ¶ 22 (alleging the GDC policies and procedures vested the troopers with discretion to use force); 6-1 at 13-14; *Edwards*, 666 F.3d at 1294. To meet this burden, Hall must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation." *Lewis*, 561 F.3d at 1291.

---

1-1 at 41-42 ¶¶ 48-49. Negligent conduct is insufficient to establish a Fourth Amendment excessive force claim. *Corbitt v. Vickers*, 929 F.3d 1304, 1319-20 (11th Cir. 2019) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)) (holding that the "'accidental effects' of conduct directed toward something other than the plaintiff" is not "the kind of 'misuse of power' which *Brower* suggests is the focus of a Fourth Amendment violation"). And Hall does not cite clearly established law that would have put the defendants on notice that placing a suspect on the side of the road after a car crash violated the Constitution.

[5] "[I]t is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt*, 929 F.3d at 1311 (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

Terminating a vehicle pursuit using a PIT maneuver constitutes a seizure and, thus, Hall's excessive force claims are governed by the Fourth Amendment's objective reasonableness standard.  *Sharp v. Fisher*, 532 F.3d 1180, 1183 (11th Cir. 2008).  To determine whether the officers' actions were objectively reasonable, the Court evaluates six factors:

> (1) the severity of the suspect's crime, (2) whether the suspect poses an immediate threat of harm to others, (3) whether the suspect is actively resisting arrest or trying to flee, (4) the need for the use of force, (5) the relationship between the need for force and the amount of force used, and (6) how much injury was inflicted.

*Wade v. Daniels*, 36 F.4th 1318, 1325 (11th Cir. 2022).  In other words, the Court weighs "the risk of bodily harm" to the suspect against "the threat to the public" the officers were "trying to eliminate from the perspective of a 'reasonable officer on the scene, rather than with 20/20 vision of hindsight.'"  *Sharp*, 532 F.3d at 1183 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

An officer's decision to terminate a vehicle pursuit using a PIT maneuver is objectively reasonable when the suspect is fleeing law enforcement officials at a high rate of speed and driving erratically—the precise circumstances Hall describes in his complaint.  *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 383-86 (2007); *Sharp*, 532 F.3d at 1184; *Clement v. McCarley*, 708 F. App'x 585, 590 (11th Cir. 2017) (holding that the officer's decision to strike a suspect's car with a patrol car was objectively reasonable when the suspect was driving erratically at a high rate of speed, had previously hit the officer's patrol car, and continued to flee).

For example, in *Scott*, an officer attempted to pull over a driver for speeding.  550 U.S. at 374.  The driver refused to stop and began "racing down" a "narrow, two-lane road[]" at night, "swerved around … a dozen other cars," "cross[ed] the double-yellow

line," and was "chased by numerous police cars." *Id*. at 379. The Court had "little difficulty in concluding" that the officer's decision to terminate the vehicle pursuit using a PIT maneuver was objectively reasonable. *Id*. at 384. Similarly, in *Sharp*, officers attempted to pull over a driver for a speeding violation; the driver fled from the officers at a high rate of speed; there were other motorists on the road; and the driver drove erratically. 532 F.3d at 1184. The Eleventh Circuit held that because the car chase "posed a substantial and immediate risk of serious physical injury to others," the officers' "attempt to terminate the chase through the use of the PIT maneuver was objectively reasonable." *Id*.

Here, Hall alleges the driver of the vehicle did not stop after trooper Staff initiated the traffic stop. Doc. 1-1 at 39 ¶¶ 30, 32. Rather, the driver fled down the southbound lanes of Interstate 75, and Staff was forced to pursue the vehicle "at a high rate of speed." *Id*. at 39 ¶ 32. Even after Troopers Story and Strickland joined the pursuit, the driver continued down Interstate 75. *Id*. at 40 ¶ 38. And most importantly, the driver drove erratically—swerving in and out of the lane—so much so that Staff's patrol car "began to slide" as he attempted to keep up with the vehicle. *Id*. at 40 ¶¶ 33-36. Thus, like the pursuits in *Scott* and *Sharp*, this high speed car chase posed a threat of harm to the troopers, other motorists, and even Hall. Hall's arguments to the contrary are unpersuasive. Doc. 13 at 9-11.

First, Hall quarrels with the defendants' characterization of the pursuit as a "high speed chase" that endangered "other motorist[s]." *Id*. at 9-10. But this characterization is based on the facts *Hall* alleged. *See* Doc. 1-1 at 39-41 ¶¶ 32, 37 (alleging Staff

followed the vehicle onto Interstate 75 "at a high rate of speed" and the vehicle "failed to maintain its lane").[6]  Thus, Hall's argument is foreclosed by his complaint.

Second, Hall argues that because he was a passenger, rather than a driver, *Scott* and *Sharp* are distinguishable.  Doc. 13 at 9-10.  While the presence of a passenger may be an additional circumstance to consider when evaluating the officers' conduct, it does not negate the reality that an erratic driver, fleeing law enforcement officials at a high rate of speed, poses a threat to the public—regardless of whether a passenger is present.  Thus, the rationale behind the PIT maneuver (i.e., ending a substantial and immediate threat to the public) applies even, and perhaps especially, when there is a passenger in the vehicle.  The point of the PIT maneuver is to bring a fleeing vehicle to a halt as safely as possible.  From a passenger's standpoint, that outcome is preferable to a high speed crash.  *See Sharp*, 532 F.3d at 1184 (emphasis added) ("It was [the suspect] who intentionally placed herself, *her passenger*, and the public in danger by engaging in the high speed chase and fleeing from the officers which ultimately produced the choice between two evils that [the officers] confronted.").

Third, Hall contends that the defendants should have simply stopped pursuing the vehicle.  Doc. 13 at 10-11.  The Supreme Court emphatically rejected this argument in *Scott*: Officers are not required to let fleeing suspects get away because of the *possibility* that the danger to the public may cease when the officers end the pursuit.  550 U.S. at 385.  Hall's argument ignores the logical fallacy in assuming that simply

---

[6] Hall takes issue with the idea that other vehicles may have been traveling on Interstate 75 in downtown Macon, Georgia.  Doc. 13 at 11.  But yet he alleges the pursuit presented an "ongoing danger … to innocent third parties" and "another vehicle struck" a GSP patrol car while he was on the side of the road.  Doc. 1-1 at 40, 42 ¶¶ 37, 49.

stopping the pursuit would eliminate the risk that the vehicle posed to the public—once the defendants ended the chase, the driver could have stopped *or* just as easily continued driving recklessly.  *Id*.  It is this "uncertainty" that led the Court to conclude officers do not have to end vehicle pursuits and "hope[] for the best."  *Id*.

To buttress his argument that the troopers should have backed off, Hall alleges the vehicle was smoking, and pieces of the vehicle's tires were flying off.  Doc. 1-1 at 40 ¶¶ 34-35.  Based on these allegations, Hall argues that the defendants should have given up the chase because "[a]ny reasonable officer" would have concluded the "pursuit would end on its own … based on the condition of the vehicle."  Doc. 13 at 10-11.  These allegations are insufficient to distinguish Hall's case from *Scott* and *Sharp*—that the vehicle *might* have stopped at some point because of mechanical issues does not change the fact that when the troopers initiated the PIT maneuver the vehicle posed a threat to the public.

Furthermore, the relevant inquiry is *not* whether there was a more reasonable alternative to the amount of force the defendants used, but rather if the method used was objectively reasonable.  *Mullenix v. Luna*, 577 U.S. 7, 15 (2015) (noting that the officer's decision to forgo spike strips and shoot a fleeing vehicle was objectively reasonable); *Mincey v. Hall*, 2023 WL 3485267, at *5 (S.D. Ga. May 16, 2023) (footnote omitted) ("Finally, the inquiry in considering [the officer's] claim of qualified immunity is not whether there was a more reasonable alternative to the use of deadly force.  The inquiry is whether his actual conduct was objectively reasonable.").  Thus, Hall's contention that "[t]he PIT maneuver was conducted without considering all other methods for stopping the vehicle" does not alter the Court's conclusion.  Doc. 13 at 3.

In sum, Hall has not demonstrated a constitutional violation because the defendants' decision to terminate the vehicle pursuit using a PIT maneuver was objectively reasonable.  But even assuming a Fourth Amendment violation, the defendants are entitled to qualified immunity because Hall cannot point to clearly established law demonstrating the defendants' conduct was unconstitutional.

A right becomes "clearly established" in three ways.  *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).  First, Hall can show that a materially similar case has already been decided, consisting of binding precedent by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court.  *Id*.  Second, Hall can show that a broader clearly established principle should control the novel facts of the particular case—that is, the unconstitutionality of the instant conduct must be apparent by looking to the guiding principles of the previous case, irrespective of the underlying factual situation.  *Id*.  Third, Hall can show that the conduct is so egregiously unconstitutional that prior case law is unnecessary.  *Id*.  The second and third methods are rarely successful—"[t]he nonexistence of a decision specifically addressing the alleged right is a significant consideration in determining whether the right is clearly established."  *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993) (citing *Muhammad v. Wainwright*, 839 F.2d 1422, 1424 (11th Cir. 1987)).

Hall does not—and cannot—point to a "materially similar case" from the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court to clearly establish the law.[7]  *See Mullenix*, 577 U.S. at 15 ("The Court has … never found the use

---

[7] Hall cites *Brower v. County of Inyo*, in the section of his brief discussing clearly established law.  Doc. 13 at 13; 489 U.S. at 597.  Hall does not argue *Brower* clearly establishes the unconstitutionality of the defendants' conduct.  Nor could he.  *Brower* merely stands for the proposition that a police roadblock constitutes a seizure under the Fourth Amendment and the Court left undecided whether the roadblock

of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity."). Rather, he contends the defendants, "by not following clearly established law and procedures of the [Georgia Department of Public Safety] Manual were well on notice that their actions violated 'clearly established laws.'" Doc. 13 at 13. But the "DPS Manual" cannot establish, clearly or otherwise, the law. *See Buzzi v. Gomez*, 24 F. Supp. 2d 1352, 1362 (S.D. Fla. 1998) ("The Court can find no cases holding that a government official's violation of department policy, without more, constitutes a constitutional violation."); *see also Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (rejecting the plaintiffs' "attempts to broaden defendants' constitutional duties by contending that defendants violated state laws and regulations"); *Davis v. Scherer*, 468 U.S. 183, 194 (1984) (holding that public officials "do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"). Simply put, there is no clearly established law that would have informed the defendants that their conduct—using a PIT maneuver to stop a fleeing car with a passenger—violated the Constitution.

Because terminating the vehicle pursuit with the PIT maneuver was objectively reasonable and Hall cannot cite a materially similar case to the contrary, Staff, Story, and Strickland are entitled to qualified immunity.

**B. State Law Claims**

Hall also asserts state law claims for assault, battery, and intentional infliction of emotional distress. Doc. 1-1 at 43-45 ¶¶ 62-73. The Court will not address these claims. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise

---

constituted an *unreasonable* seizure. 489 U.S. at 598-600; *Scott*, 550 U.S. at 384 n.10 ("The only question in *Brower* was whether a police roadblock constituted a seizure under the Fourth Amendment.").

jurisdiction as to those claims over which it has supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction.  In exercising its discretion, the court should consider comity, judicial economy, convenience, and fairness to the parties.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994) (finding that the test as outlined in *Gibbs* should be used in accordance with § 1367).  The Eleventh Circuit has recognized "that when all federal claims are eliminated before trial, the *Gibbs* factors will ordinarily point toward dismissing the state claims as well."  *Edwards v. Okaloosa Cnty.*, 5 F.3d 1431, 1433 (11th Cir. 1993) (citing *Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Because the Court is dismissing the § 1983 claims against Staff, Story, and Strickland—the claims over which it has original jurisdiction—the Court declines to exercise supplemental jurisdiction over Hall's state law claims for assault, battery, and intentional infliction of emotional distress.  *See Gibbs*, 383 U.S. at 726.  Accordingly, these claims are **REMANDED** to the State Court of Bibb County, Georgia.

## IV. CONCLUSION

In sum, the defendants' motion for judgment on the pleadings (Doc. 6) is **GRANTED in part**.  Hall's § 1983 claims against defendants Staff, Story, and Strickland are **DISMISSED with prejudice**.  Hall's § 1983 claims against the State of Georgia are **DISMISSED without prejudice**.  And Hall's state law claims are **REMANDED** to the State Court of Bibb County, Georgia.[8]

---

[8] Hall "requests leave to amend the Complaint to address any deficiencies."  Doc. 13 at 4.  But amending would be futile because Hall cannot cite clearly established law putting the defendants on notice that the PIT maneuver was objectively unreasonable.  Accordingly, Hall's request to amend his complaint is **DENIED** for futility.

**SO ORDERED**, this 28th day of September, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

-13-